## 15655

### LEPPARD v. CENTRAL CAROLINA TELEPHONE CO.
(30 S. E. (2d), 755)

*Mr. James E. Leppard,* of Chesterfield, S. C., and *Mr. L. C. Wannamaker,* of Cheraw, S. C., Counsel for Appellant,

*Mr. J. Arthur Knight,* of Chesterfield, S. C., Counsel for Respondent,

June 9, 1944.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the Opinion of the Court:

Appellant, the owner of a lot abutting on a public street or highway in the town of Chesterfield, upon which her residence is located, brought suit in trespass to recover damages for injury to her property, and for a mandatory injunction to cause the removal of a telephone pole and wires placed by the respondent in the curb line of the sidewalk in front of her residence. This telephone line was built without the consent of the appellant, against her protest, and without the payment of compensation.

The defendant is a foreign corporation, authorized to erect and maintain its telephone lines along and upon any of the highways or public roads of this State. Code, Section 8531. And under authority of the law it constructed the line in

question along the state highway, the fee to which, subject to the public easement, is in the plaintiff.

The principal question in the case is as to whether such use of the street or highway is a servitude, not within the contemplated uses of a city street, and therefore an additional burden on the fee of the appellant, for which she should be compensated.

Whether a telephone line can be erected and maintained upon a public street without compensation to the owner of the fee is a question upon which there is a wide divergence of opinion. The decisions of the Courts of this country are at such variance as to render hopeless any effort to reconcile them. It is generally admitted that the Legislature may subject the highway to this use. The question is whether it can be done without compensation to the owner of abutting lands. On one side it is said that a telephone line is but an improved method of subjecting the streets of a city to an old use, and that the poles and wires are just as necessary adjuncts to this new method as are the poles and wires of a street railway or an electric lighting system erected in substantially the same manner, and no more obstructive. The public easement, it is asserted, may be utilized for the transmissiion of intelligence, as well as for travel and transportation. When new modes of travel and new means of communication become necessary, the public have a right to use them, and they impose no new burden on the soil unless they are inconsistent with the old use. Accordingly, many authorities are to the effect that the poles and wires of a telephone are not an additional servitude upon a public highway. And they are supported by the very sound reasoning that a message sent along the wires in the street takes the place of a messenger, and thus relieves the street of much of the use to which it would otherwise be subjected.

On the other hand, it is argued that the use of streets for the permanent maintenance of poles and wires occupying a portion of the street is a use not contemplated in the laying

out of streets generally. Reasoning on this basis, it is the rule in many jurisdiction that a telephone line is an additional servitude upon a public highway, for which compensaton must be paid. Many of the authorities on each side of this question are cited in the well-considered case of *Frazier v. East Tennessee Telephone Co.*, 115 Tenn., 416, 90 S. W., 620, 3 L. R. A., N. S., 323, 112 Am. St. Rep., 856, 5 Ann. Cas., 838; 18 Am. Jur., Sec. 204, page 834; 29 C. J. S., Eminent Domain, § 133d, page 963. And see Annotations, 8 A. L. R., 1293, 19 A. L. R., 383, 106 Am. St. Rep., 232.

In this case, the appellant conveyed by deed to the South Carolina Highway Department, on June 8, 1931, an unqualified right of way for the construction of a state highway on Route No. 9, running in front of her residence. It is clear that as an abutting property owner she was owner of the fee to the center of the highway, which, upon the execution of her deed, became subject to the public easement.

The proposition is equally elementary that the acquisition by the public of an easement in land for the construction of a public highway, gives no right to another and different easement subversive to its proper use. But when a use is granted by proper authority, and does not constitute an additional burden upon the fee, no compensation is due to the owner. *Lay v. State Rural Electrification Authority*, 182 S. C., 32, 188 S. E., 368; *Mordhurst v. Fort Wayne & Southwestern Traction Co.*, 163 Ind., 268, 71 N. E., 642, 106 Am. St. Rep., 222, 2 Ann. Cas., 967; *Cater v. Northwestern Tel., Etc., Co.*, 60 Minn., 539, 63 N. W., 111 28 L. R. A., 310, 51 Am. St. Rep., 543.

It appears from the manner in which the case has been presented and discussed by counsel, that defendant's telephone line is for the use of the public upon payment of certain charges. Therefore, the use to which the highway has been appropriated by the defendant is a public one. The transmission of intelligence by telephone is a business of a

public character, which under our law is to be conducted under public control, in substantially the same manner as the transportation of persons or property by common carriers. *State v. Citizens' Tel. Co.*, 61 S. C., 83, 39 S. E., 257, 55 L. R. A., 139, 85 Am. St. Rep., 870; Code Sections 8229, 8230, 8231, 7232, 8239, 8531, and 8532.

■  Whether an easement authorizes the use of land in a particular way depends upon the nature and extent of the easement. In *Magee v. Overshiner*. 150 Ind., 127, 49 N. E., 951, 40 L. R. A., 370, 65 Am. St. Rep., 358, it is said:

"Is the telephone equipment an unnecessary or unreasonable obstruction, and a new and additional servitude? Will it suffice to say that because a street was dedicated or condemned 50 years ago, before electric inventions for lighting, communicating oral and telegraphic messages, and propelling street cars were thought of, it could not therefore, have been condemned or dedicated in contemplation of the uses therein of such inventions; or that, because gas had not been used as a method of lighting, the right to lay pipes to conduct the gas could not have been contemplated; or that because water, for protection against fire, had not been forced through pipes in the streets, such use could not have been contemplated; and so on as to the uses of the street for sewerage, for natural gas piping, for telegraph or telephone lines, above or below surface of the street, or the possible future uses of pneumatic tubes for the transmission of mails or parcels, and the distribution of steam or electricity for heating, etc.? If what was actually contemplated at the time of the dedication should be found to answer the question in every case, many of the uses common to the streets of every city would be additional servitudes, for which the fee owner would be entitled to compensation."

And the Court in the *Magee case* reached the conclusion that the contemplated uses should be deemed to have been

not only in the walking, riding upon horseback and in wagons and other vehicles drawn by animals in the going and returning upon business, social, religious, or political missions; but also by such methods of travel and communication, in addition or in substitution for those, as might come into vogue and be accepted and recognized as proper and important uses of the streets in the varying needs and demands of commerce.

In *Cater v. Northwestern Tel., Etc., Co.,* 60 Minn., 539, 63 N. W., 111, 112, 28 L. R. A., 310, 51 Am. St. Rep., 543, the Court said:

"The question, then, is, what is the nature and extent of the public easement in a highway? If there is any one fact established in the history of society and of the law itself, it is that the mode of exercising this easement is expansive, developing and growing as civilization advances. In the most primitive state of society the conception of a highway was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; * * *, constituting, respectively, the 'iter', the 'actus', and the 'via' of the Romans. And thus the methods of using public highways expanded with the growth of civilization until to-day our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired. Hence it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired, but includes all new and improved methods, the utility and general convenience of which may afterward be discovered and developed in aid of the general purpose for which highways are designed. And it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired, and are more onerous to him than those then in use."

After a careful consideration of many of the cases covering this field of the law, we are of the opinion that the grant or a condemnation of a public street or highway must be presumed to have been made not for such purposes and usages only as were known to the landowner at the time of the grant, but for all public purposes, present and prospective, consistent with its character as a public highway, and not actually detrimental to the abutting real estate. The convenience and advantage of all the inhabitants of the city and of the public at large must be regarded as objects contemplated when the grant was made.

We also quote with approval the following from the case of *Cater v. Northwestern Tel., Etc., Co., supra:*

"We are not unmindful that private property cannot be taken for a public use without compensation, however important that public use is. We are not forgetful of the fact that care should be taken that, in the proper zeal for modern public improvements, the burden of furnishing these improvements should not be shifted from the public, and imposed upon any particular class of individuals. But viewing, as we, do, highways as being designed as public avenues of travel, traffic, and communication, the use of which is not necessarily limited to travel and the transportation of property in moving vehicles, but extends as well to communication by the transmission of intelligence, it seems to us that such a use of a highway is within the general purpose for which highways are designed, and, within the limitation which we have suggested, does not impose an additional servitude upon the land; in short that it is merely a newly discovered method of using the old public easement."

It follows from what has been said that the telephone, with its necessary poles and wires upon the street, cannot be regarded as a new and different easement or an additional servitude, for which the abutting property owner is entitled to compensation.

The issue presented by this case is not altogether one of first impression. We considered the identical question in *Lay v. State Rural Electrification Authority*, 182 S. C., 32, 188 S. E., 368, as applied to the erection of electric lines along a country highway. In that case it was held that the erection of a transmission line by the electrification authority under a Legislative Act, along a rural highway, for which a farmer had given an easement for highway purposes to the state, imposed no additional servitude in the light of modern invention and progress; nor did it constitute the taking of private property for public use without just compensation. The same reasoning employed in the *Lay case* is applicable and pertinent here.

In our opinion, there is no essential difference between urban and rural servitudes. Life in the country is not what it used to be. Its isolation is largely a thing of the past. Modern invention, new methods of sanitation, and improved highways are playing their important part in bringing the rural districts within the beneficial enjoyment of city improvements. In this sense it has been said that it is hard to distinguish between a rural and an urban street; that the nature of a street changes insensibly from the former to the latter, and a rule of property which depends on such a shifting and indefinite distinction is not likely to prove satisfactory. Keasly on Elec. Wires, Sec. 103.

In the earlier case of *Benton v. Yarborough et al.*, 128 S. C., 481, 123 S. E., 204, 34 A. L. R., 402, it was held that a private individual had no right by permission of county authorities to construct a telephone line for his own private use along a public highway over the protest of the owner of the fee. But the issue now presented was expressly held not to be involved.

> It can hardly be necessary to add that the fact that the telephone line is owned by a corporation, and not by the state, is not material—provided it is au-

thorized by the state and devoted to a public purpose. It is true that one of the objects in operating and maintaining a telephone system is to make profit for corporations. This, however, cannot be made the test of a public use. No such structures can be put in the highways except by authority of the state, and then only for the public use. The state can and does say how such lines shall be constructed and operated, and they are subject to public regulations and general legislative control as are other public carriers.

Nor is there any merit in the contention that Section 8531 requires that foreign corporation shall be formally chartered or incorporated under the laws of South Carolina in order to enjoy the rights and privileges therein granted. That section provides:

"Any telegraph or telephone company incorporated under the laws of this or any other State, upon complying with the laws of this State regulating foreign corporations, and by becoming a domestic corporation, may construct * * * its line * * * along and upon any of the highways or public roads of the State * * *."

It is alleged in the complaint and admitted by the answer:

"That the defendant is a foreign public utility corporation, duly authorized, chartered and existing under and by virtue of the laws of one of the states of the United States of America, and was at all times hereinafter mentioned and now is, duly licensed to and engaged in the operation of a public telephone system in Chesterfield County, South Carolina, by and through officers, agents, and employees residing therein."

In *Blue Ridge Power Co. v. Southern R. Co.*, 122 S. C., 222, 115 S. E., 306, 308, it was said:

"The domestication of a foreign corporation is nothing more than the extension to it of the privilege or license as a foreign corporation to do business in this state, and its susceptibility to service and suit in the state."

And in *Southern Power Co., v. Walker,* 89 S. C., 84, 71 S. E., 356, it was stated that the Act of 1904 (Sec. 8540, 1942 Code) not only confers upon electric lighting and power companies, incorporated under the laws of this state, the privileges therein mentioned, but, also, upon those companies incorporated under the laws of any state, which have complied with the laws of this state regulating foreign corporations And see *State ex rel. Southern Ry. Co. v. Tompkins,* 48 S. C., 49, 25 S. E., 982.

Section 8531 and related sections clothe foreign telegraph and telephone corporations with the same powers, rights and privileges, and impose upon them the same liabilities and duties as domestic corporations. There is essentially no difference between the foreign and domestic corporations. The intention was to obliterate any distinction in the treatment of domestic corporations and foreign corporations which had complied with the laws regulating foreign corporations. The effect was to give the foreign corporation the same standing in the eye of the law as the domestic corporation, giving it the same rights and subjecting it to the same remedies. It is evident from the pleadings that the respondent is duly licensed to operate a public telephone system in Chesterfield County.

Nor do we find any basis in Section 8531 for the contention that telegraph and telephone companies shall pay compensation to an abutting property owner for the privilege of erecting their lines along a street or public highway.

It appears from the record that on April 29, 1931, the plaintiff granted to the defendant, its successors and assigns, the right to erect and maintain a telephone pole upon her lot, near the edge of a driveway and close to the boundary line between her and a neighbor. The deed also gave the right to repair and maintain the pole. When the new line was constructed upon the highway in front of her residence,

the old pole was cut down and removed. The complaint sets forth a cause of action against the telephone company for damages sustained to her property, including lawn and shrubbery, in the removal of the old pole, and damages resulting from the erection of the new pole.

There is some evidence from which it may be inferred that certain hedge bushes on her property were broken down or pulled up, and that the new pole by reason of its location constituted a menace to ingress and egress.

The lower Court upon motion of the defendant granted an order of nonsuit, and the case comes to us upon appeal from this order. An examination of the record discloses no evidence except that just mentioned, tending to show special damages.

The lower Court was entirely correct, in our opinion, in holding that the erection of poles and the construction of the telephone line in front of plaintiff's property upon the public highway constituted no additional servitude. Hence, the plaintiff was not entitled to compensation. However, we think that the evidence as to special damages was inadvertently overlooked.

The plaintiff alleged an indivisible cause of action, and the rule followed in this state is that a part of an indivisible cause of action may not be dismissed in a law case, defendant's remedy being to request the Court to charge that no recovery could be had as to the objectionable parts. *Jowers v. Dysard Const. Co.,* 113 S. C., 84, 100 S. E., 892.

And so in this case, if the motion for a nonsuit had not been made and granted, and the case had proceeded to trial, it would have been proper for the Court to have charged the jury that the erection of the telephone line upon the street created no additional burden upon the abutting land, and hence the plaintiff was entitled to no compensation therefor.

We, of course, express no opinion with reference to the strength or weakness of the evidence offered by plaintiff as to special damages, but we think it was sufficient to warrant the submission of this issue to the jury—that is, the damages, if any, to the shrubbery by the removal of the old pole, and any damages sustained by reason of the location of the new pole. Solely for the trial of these elements of damages, the case will be remanded.

Case remanded.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES TAYLOR and OXNER concur.

MR. ASSOCIATE JUSTICE STUKES concurs in result.

MR. ASSOCIATE JUSTICE OXNER (concurring):

Considering the question on principle and as one of first impression, I think the better view is that the construction and maintenance of a telephone line along the right of way of a public highway or street imposes a new and additional burden upon the fee, for which the abutting property owner is entitled to compensation. This was the conclusion recently reached by the Supreme Court of North Carolina, after an elaborate review of the authorities, in the case of *Hildebrand v. Southern Bell Telephone & Telegraph Co.*, 219 N. C., 402, 14 S. E. (2d), 252. But the point was otherwise decided by this Court in *Lay v. State Rural Electrification Authority*, 182 S. C., 32, 188 S. E., 368, and I do not think the instant case can be distinguished in principle from the *Lay case*. Inasmuch as a rule of property law is involved and these rules ought to be fixed and settled, I think I should follow the *Lay case*. For this reason I concur in the opinion of MR. ASSOCIATE JUSTICE FISHBURNE.

MR. ASSOCIATE JUSTICE STUKES concurs.

Order on Rehearing.

PER CURIAM.

It is suggested in the petition for rehearing filed by the appellant in this case, that the Court overlooked or misap-

prehended the point made in the exceptions and the brief that if Code section 8531 is construed to authorize the respondent to erect and maintain its telephone line on the land of the appellant within the right of way of the State Highway Department, without compensation being paid to her as owner of the fee, then such section of the Code would run counter to the provisions of Section 20 of Article IX of the Constitution. This section provides that: "No right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner * * *."

It is true that in the opinion heretofore filed in this case, no specific reference is made to Section 20 of Article IX of the Constitution. It was made entirely clear, however, that the question of whether or not the appellant is entitled to compensation as an abutting land owner depends upon whether the installation of the telephone line constitutes an additional servitude upon the fee.

We held that the telephone, with its necessary poles and wires upon the street, cannot be regarded as a new and different easement or an additional servitude, for which the abutting property owner is entitled to compensation. And in doing so we, of course, had the constitutional provision in mind. This was implicit throughout our discussion of the appeal.

Inasmuch as the erection and maintenance of the poles and wires do not create an additional burden, there is no violation of Section 20 of Article IX of the Constitution, in failing to pay compensation.

Petition denied.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne, Stukes, Taylor and Oxner, concur.