19692

RICHLAND COUNTY, State of South Carolina, Appellant, v.
PALMETTO CABLEVISION, Respondent

(199 S. E. (2d) 168)

*Frank K. Sloan, Esq.,* of Columbia, *for Appellant* cites:

*Messrs. John Gregg McMaster and Robert J. Thomas,* of Columbia, *for Respondent,* cite:

September 7, 1973.

*Per Curiam:*

In this action the appellant Richland County sought to enjoin the respondent from operating and maintaining a cable television system in Richland County, and now appeals from a judgment of the lower court denying that relief. The exceptions are twenty in number and none of them have been expressly abandoned. We have encountered some difficulty in determining just precisely which ones have been abandoned through failure to argue the same in appellant's brief, though it is clear that many have been abandoned. In any event, appellant has failed to convince this Court of any merit in its appeal.

To the extent necessary to an understanding of the issues of this case, the order of the lower court will be reported

herewith. Substantial portions thereof will, however, be omitted from publication, since such are not here challenged. Additionally, for the reasons set forth below, no useful purpose would be served by publishing much of the decree dealing with the unconstitutionality of Act No. 1083 of the 1972 Acts of the General Assembly of South Carolina.

His Honor held said Act to be special legislation and unconstitutional in violation of Article III, Sec. 34 of the South Carolina Constitution. Additionally, he concluded that said Act was unconstitutional as being a delegation of legislative power in violation of the South Carolina Constitution; as impairing the obligation of contracts, as depriving the respondent of its property without due process of law and as denying the respondent the equal protection of the laws, in violation of the applicable provisions of both State and Federal Constitutions. While the appellant excepted to these latter holdings of unconstitutionality, none of such exceptions have been expressly argued under any appropriately stated question and we, accordingly, deem such abandoned.

Under these circumstances, His Honor's holding of unconstitutionality on grounds other than being special legislation have become, right or wrong, the law of the case, rendering it virtually moot whether or not said Act is unconstitutional as special legislation. We are satisfied, however, that he was clearly correct in holding the said Act to be special legislation in violation of Article III, Sec. 34 of the South Carolina Constitution.

Affirmed.

## ORDER OF JUDGE GRIMBALL

In this action the plaintiff seeks to enjoin the defendant from operating or maintaining a cable television system in Richland County. The plaintiff relies upon Act No. 1083 of the 1972 Acts of the General Assembly, which was signed by the Governor on March 24, 1972, on which date by its terms it took effect. Section 1 of the Act amends the 1964 Act establishing the Board of Administrators (now the County Council) of Richland County and purports to confer upon it the authority to grant franchise licenses for the operation of cable television service in all areas of Richland County except the City of Columbia. The exact language of Section 1 is as follows:

"Section 1. Section 5 of Act No. 726 of 1964, as last amended by Act No. 3 of 1967, is further amended by adding new item (m) to read as follows:

" '(m) The granting of franchise licenses at such fees as it may determine for the operation of cable television service in all areas of the county except the city of Columbia.' "

Section 2 of the Act provides:

"Section 2. It shall be unlawful in Richland County for any person to operate a cable television service for which charges are made without a franchise license. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction shall be fined no less than one thousand dollars nor more than five thousand dollars or be imprisoned for not less than six months nor more than one year. Each day of unlawful operation shall constitute a separate offense."

Plaintiff also alleges that the defendant is trespassing upon the rights-of-way of the plaintiff; that the defendant is violating the Rules and Regulations of the Federal Communications Commission; that the defendant is using the State rights-of-way without compensation to the State in violation of Article 3, Section 31 of the Constitution of South

Carolina, 1895; that the defendant is using rights-of-way of public utility corporations without compensation to the land owners in violation of Article 9, Sections 19 and 20 of the Constitution of South Carolina, 1895; and that the defendant is a public utility or *quasi*-public utility and is violating the public utility laws and regulations of the State of South Carolina.

In its Answer, the defendant admits that it is operating a cable television system in Richland County and alleges that such operation commenced prior to March 24, 1972, the effective date of Act No. 1083. The defendant alleges that Act No. 1083 is unconstitutional and void because of conflicts between it and various parts of the Constitution of South Carolina, 1895, and the United States Constitution.

The entire matter was heard by the Court without a jury at hearings held on March 31, 1972, April 7, 1972, and April 20, 1972. Testimony was taken, numerous exhibits were received in evidence, and the matter was argued fully by counsel for both sides, orally and by brief.

The entire record has been carefully considered. At the outset, something should be said about the nature of cable television. A generation or more ago, when television was first introduced, the quality of the picture reception was a common problem. Some areas could receive no picture at all, and some areas could receive a limited number of channels of poor quality. One of the reasons for the difficulty in obtaining a good picture was the basic characteristic of television signals. Television signals, as distinguished from radio signals, travel on a straight line. That is to say, they will not bend over the horizon and can be interrupted by hills or mountains, or man-made obstacles such as tall buildings. Accordingly, the higher the transmitting and receiving antennas are placed the better the picture reception is likely to be.

In the early days of television, people found that by placing their antennas on their roofs or on top of long poles they got

better reception. It was soon found that by group action a single tall antenna could be constructed from which cables or wires could be run into several homes in a neighborhood, and by this method a single antenna could bring excellent picture and sound reception to several television sets. This marked the beginning of cable television. Cable television, also known as CATV, began in 1949.

Businessmen soon entered the field of cable television, and today there are many cable television systems all over the country ranging in size from a very few subscribers to more than 40,000 subscribers. Using today's modern technology, engineers designing a cable television system use highly sensitive instruments to find a place where reception is best. An antenna of an extremely high quality is then placed in that area. Television signals from the air are received by the antenna and passed on to an electronic control center or "head end" which filters the interference, amplifies the signals and converts the frequency to one which can be carried over the cable. Next, the main cable or "trunk" line carries the signals to smaller feeder cables which may be serving an area the size of a city block or other area where there is a cluster of homes. Next, individual connections or "drops" then lead from the feeder cable to the television sets being served. The main or "trunk" cables and the feeder cables are usually attached to telephone company or power company poles.

The subscribers to cable television usually pay an installation charge or a small monthly fee which remains constant no matter how much the television set is used. For this fee, the subscriber receives clearer reception and usually a greater number of programs from which to choose.

There is nothing compulsory about cable television. Each television set owner is free to subscribe or not subscribe to cable television service. If he chooses not to subscribe he can receive the same picture and sound reception from his own television antenna as he customarily received in the past.

Cable television systems today have the potential of carrying thirty (30) or more channels. With such potential, cable television systems can "import" distant signals that would otherwise not be available to many television viewers in a community.

Until recently, cable television was not regulated by the Federal Communications Commission (FCC). However, in 1966 the FCC issued rules and regulations governing the initiation of new CATV systems. These rules and regulations were of a limited nature and remained in force until new rules and regulations were issued by the FCC on February 12, 1972, to take effect after March 31, 1972.

Cable television systems have existed in South Carolina for more than twenty (20) years. Except within municipalities, they have been unregulated by local authorities. There is evidence that at least fifteen (15) counties in South Carolina, and perhaps as many as twenty-one (21), have privately owned cable television systems in operation.

The principals behind Palmetto Cablevision, Inc., the defendant in this action, commenced their efforts toward the establishment of a cable television system in Richland County, and perhaps other counties, sometime ago. They were advised, through their attorney, by the office of the Attorney General of South Carolina in an opinion letter dated October 31, 1969 (Defendant's Exhibit A), that counties in South Carolina have no authority or power with respect to the granting of licenses of franchises for cable television. The letter added: "In our judgment there is no conceivable way that any matter relating to cable television could come within the jurisdiction of a county."

On August 5, 1970, Palmetto Cablevision, Inc. and Southern Bell Telephone and Telegraph Company entered into a license agreement for the use of the latter's poles and rights-of-way. This contract required that Palmetto Cablevision, Inc. obtain any "necessary" consent from the State or municipal authorities or from the owners of property affected as

a condition to the use of the company's poles and rights-of-way. Prior to the date of this contract, the Richland County Council, in response to an inquiry by the telephone company, wrote a letter dated November 24, 1969, signed by its Finance Director, David A. Fulton, stating that Richland County does not have any authority or power with respect to the granting of licenses or franchises for cable television in the unincorporated areas of the county. The letter (Defendant's Exhibit B) added: "Therefore, no franchise or other permit is required by this County for the installation of CATV Cable." On August 23, 1971, a license agreement similar to that entered into with the telephone company was consummated with South Carolina Electric and Gas Company. The agreements with the telephone company and the power company both contained provisions providing for safety conditions and standards of construction and required Palmetto Cablevision, Inc. to carry public liability and other insurance in substantial sums.

On December 22, 1971, the defendant, as required by the 1966 Rules of the FCC, sent to the Columbia television broadcasters a notification letter (Defendant's Exhibit X) giving notice of its intention to carry via CATV the signals of the four Columbia television stations and three Augusta stations. Defendant became authorized under the FCC rules to carry the signals of the four Columbia stations when 30 days expired without any protests being filed to the carriage of those signals. (Protests were filed by some of the Columbia television stations with respect to the importation of the signals of the Augusta stations and those cannot be carried by the defendant at this time under the FCC rules.)

The defendant began construction of a cable television system and the system began operations prior to March 24, 1972, the effective date of Act No. 1083. Prior to that date, the defendant had entered into 56 signed contracts with customers, had made connections or "drops" into 31 homes, and was providing actual service to nine homes. The plaintiff

has attempted to disparage the infant cable television system of the defendant, but the fact remains that the system was in operation before the effective date of the Act, and that at this point the defendant had invested or committed a very substantial sum.

The first question for consideration by the Court is whether Act No. 1083 signed by the Governor on March 24, 1972, violates Article 3, Section 34 of the Constitution of South Carolina, 1895, which provides that when a general law can be made applicable no special law shall be enacted. The Act in question, which is quoted in full in an earlier part of this Order, purports to authorize the Richland County Council to grant franchises and licenses for fees for the operation of a cable television service in all areas of Richland County except the City of Columbia. It then goes on to provide that it shall be unlawful in Richland County for any person to operate a cable television service without a franchise license.

The Act singles out Richland County from the 46 counties in this State as an area in which it is unlawful to operate a cable television service without a franchise license. In the Court's opinion the Act is unconstitutional.

\*     \*     \*

There remain for consideration the other grounds for an injunction raised by the plaintiff.

The plaintiff contends that the defendant must obtain the plaintiff's permission to use the public streets and rights-of-way and that the defendant has not done so.

It appears to the Court that permission from the plaintiff is not required, but even if it is, the plaintiff has given it.

The defendant can provide its cable television service in two ways. One way is to use cables leased from the local telephone company. Another way is to use its own cables which are strung on the poles of the local utilities. The defendant is presently using the latter method. The defendant

has license agreements with Southern Bell Telephone and Telegraph Company and South Carolina Electric and Gas Company for the use of their poles on rights-of-way already acquired.

The rights-of-way of Southern Bell Telephone and Telegraph Company were acquired pursuant to the authority of Section 58-301, Code of Laws of South Carolina, 1962, which provides as follows:

"Any telegraph or telephone company incorporated under the laws of this State and any such company incorporated under the laws of any other state, upon complying with the laws of this State regulating the doing of business in this State by foreign corporations and by becoming a domestic corporation, may construct, maintain and operate its line through, upon, over and under any of the public lands of this State, under, over, along and upon any of the highways or public roads of the State, over, through or under any of the waters of this State, on, over and under the lands of any person in this State and along, upon and over the right of way of any railroad or railway company in this State; *provided,* that such line is constructed so as not to endanger the safety of persons or to interfere with the use of such highways or public roads, the navigation of such waters or the operation and running of the engines and cars of such railroads or railways and that just compensation is first paid such landowners and railroad or railway companies for such right and privilege, to be ascertained in the manner herein provided. Any person erecting or maintaining any such wire in violation of the provisions hereof shall forfeit and pay as a penalty therefor the sum of five dollars per day for each day such default continues after he shall have been given thirty days' written notice specifying the default or defect in the manner of erection, construction or maintenance thereof, to be recovered at the suit of any citizen of any county in which such violation occurs. The sum so recovered, after paying therefrom all the expenses incurred in the prosecution of

such suit, shall be paid into the county treasury for ordinary county purposes."

· The rights-of-way of South Carolina Electric and Gas Company were acquired pursuant to the authority of Section 24-12, Code of Laws of South Carolina, 1962, which provides as follows:

"Subject to the same duties and liabilities, all the rights, powers and privileges conferred upon telegraph and telephone companies to acquire rights of way for the construction, maintenance and operation of lines under § § 58-301 to 58-313 are hereby granted unto electric lighting and power companies incorporated under the laws of this State, or to such companies incorporated under the laws of any other state which have complied with the laws of this State regulating foreign corporations doing business in this State, and to State authorities and rural electric cooperatives, and the right is also granted to such companies and authorities and rural electric cooperatives to acquire fee simple title or an easement in land pursuant to the condemnation proceedings mentioned in § 58-302, for the construction of electric generating plants, substations, switching stations and impounding of waters to be used in conjunction with electric generating plants; *provided, however,* no property or rights used for the generation or transmission of electricity, or devoted to public use for such purposes, shall be condemned hereunder."

The extent of the rights-of-way granted to these utilities is very broad as can be seen from the case of *Leppard v. Central Carolina Telephone Co.,* 205 S. C. 1, 30 S. E. (2d) 755 (1). There, the telephone company erected poles and wires along a public street in front of the plaintiff's home. The plaintiff alleged a trespass and sought damages. She was the owner of fee subject to the street right-of-way. After discussing the authorities, the Court held that the telephone company's use of the street, which was authorized by Section 58-301, above quoted was not an additional ser-

vitude for which the fee owner was additional compensation. The Court said:

"After a careful consideration of many of the cases covering this field of the law, we are of the opinion that the grant or a condemnation of a public street or highway must be presumed to have been made not for such purposes and usages only as were known to the landowner at the time of the grant, but for all public purposes, present and prospective, consistent with its character as a public highway, and not actually detrimental to the abutting real estate. The convenience and advantage of all the inhabitants of the city and of the public at large must be regarded as objects contemplated when the grant was made." 205 S. C. at page 8, 30 S. E. (2d) at page 757.

Applying the principle here, we have utilities with very broadly defined rights-of-way, the use of which necessarily changes in character and extent from time to time. The stringing of additional cables and the leasing of new cables for newly conceived uses is clearly authorized. By the same reasoning, the licensing of the defendant to string its cables on the existing poles of the utilities is also authorized.

Nevertheless, if permission to use the streets and rights-of-way were required, such permission was given both by the County Council and by the County Supervisor. That such permission was given by the County Supervisor is conceded. The plaintiff devotes much argument to the point that the Supervisior had no authority to grant the permission. The Court is inclined to the view that the Supervisor was so authorized at the time in question under the relevant statutes.

The Supervisor was authorized to issue a permit by Section 14-254, Code of Laws of South Carolina, 1962, which provided that:

"The County Supervisor shall have general jurisdiction in his county (a) over all public highways, roads, bridges and ferries. ..."

Authority also appears in Section 33-801, Code of Laws of South Carolina, 1962, which provides as follows:

"All roads, highways and ferries that have been laid out or appointed by virtue of an act of the General Assembly, an order of court or an order of the governing body of any county are declared to be public roads and ferries, and the county supervisor and the governing body of the county shall have the control and supervision thereof. The county supervisor and governing body of the county may order the laying out and repairing of public roads where necessary, designate where bridges, ferries or fords shall be made, discontinue such roads, bridges and ferries as shall be found useless and alter roads so as to make them more useful."

The above reference to "the governing body of the county" who along with the county supervisor shall have the control and supervision of the public roads refers to the Board of Road Commissioners which was established by Act No. 726 of the 1964 Acts. This is the same Act which created the Board of Administrators (now the County Council) of Richland County. Said Act enumerates the duties and powers of the Board of Road Commissioners and of the Board of Administrators. In Section 2 of the Act, the Board of Road Commissioners was charged with:

"[T]he responsibility for construction and maintenance of all public highways of the county, roads and bridges . . . ."

No such power or any similar power was granted to the Board of Administrators.

Finally, it is clearly the Supervisor who was empowered to authorize excavations to cross underground any road owned by the County. Section 33-456, Code of Laws of South Carolina, 1964 provides:

"Any person desiring to make any excavation for any purpose in or across any road outside any incorporated city or town, not in the State highway system, shall make and file with the county supervisor an application in writing for

permission to make such excavation. Such application shall state fully the nature, purpose, extent and depth of the proposed excavation and shall contain such further information as may be required by the supervisor. Before such permission shall be granted the applicant shall execute and deposit in the office of the supervisor a good and sufficient bond of indemnity, or cash, in such sum as may be required to repair the road and restore it to as good condition as to foundation and surface as it was before being excavated. When such excavation is to be made by a solvent public utility, such bond may be executed by the utility without additional surety."

However, if it be assumed *arguendo* that permission from the County Council was required, the County Council gave perforce the letter of November 24, 1969 (Defendant's Exhibit) written to the telephone company stating that Richland County does not have any authority or power with respect to the granting of licenses or franchises for cable television in the unincorporated areas of the County. In clear language, the letter stated: "Therefore, no franchise or other permit is required by this County for the installation of CATV Cable." This letter clearly gave the green light if any was needed, as far as the County was concerned, and disclaimed any authority to require what the plaintiff now seeks to require in the present action to enjoin the defendant. The idea that permission should be required for the defendant to use the public roads and rights-of-way seem to be an afterthought, developed after the defendant had acquired vested rights in reliance upon the prior disclaimer.

The plaintiff next contends that the operation of the plaintiff's cable television system violates the rules and regulations of the FCC. This contention is without merit. Having commenced its operation prior to March 31, 1972, the defendant's system is expressly "grandfathered" by the Commission's Cable Television Report and Order FCC 72-108, . . . . F. C. C. (2d) . . . ., 37 Fed. Reg. 3252 at para. 107, pp. 3267-3268 (Feb. 12, 1972).

The plaintiff's chief contention in this respect is (quoting from plaintiff's brief): "The FCC rules require a system *serve* at least fifty (50) subscribers before it can begin operation." (Emphasis by the writer of plaintiff's brief.)

The foregoing contention does not correctly represent what the FCC rules provide. They provide [Defendant's Exhibit W, p. 374, Section 74.1101(a)] a definition of a CATV system adding: "[B]ut such term shall not include . . . any such facility which serves fewer than 50 subscribers. . . ." (Citation is to the Second Report and Order of the FCC, March 1968. The same language is contained in the Third Report and Order of the FCC, February 1972, Sec. 76.5.)

The purpose of the foregoing definitional qualification is simply to exempt from FCC regulation systems having fewer than 50 subscribers. The FCC thus held in Service Electric TV Cable, Inc., 32 FCC (2d) 337 (1971) (contained in Defendant's Exhibit Y) that a system need not have 50 subscribers in order to be grandfathered.

In any event, this court is not the proper forum to police alleged violations of FCC regulations.

* * *

Finally, the plaintiff contends that the defendant is a public utility and is violating the laws pertaining thereto.

Section 58-1, Code of Laws of South Carolina, 1962, gives the Public Service Commission jurisdiction over public utilities as follows:

"The Public Service Commission is hereby vested with power and jurisdiction to supervise and regulate the rates and service of every public utility in this State and to fix just and reasonable standards, classifications, regulations, practices and measurements of service to be furnished, imposed or observed and followed by every public utility in this State."

A "public utility" is defined in Section 58-101, Code of Laws of South Carolina, 1962, as follows:

"(3) The term 'public utility' includes every corporation and person furnishing or supplying in any manner gas, heat (other than by means of electricity), water, sewerage collection, sewerage disposal and street railway service, or any of them, to the public, or any portion thereof, for compensation."

Obviously, a business engaged in cable television service is not a "public utility" as the plaintiff contends. Cable television companies have been competing with each other throughout South Carolina in at least 15 counties and the defendant must take its chances competing with other cable television service companies. Furthermore, the service offered by the defendant is not an essential service. Many families will choose not to use the services of the defendant or any other cable television company and will not be inconvenienced without it.

Apparently recognizing the weakness of its "public utility" contention, the plaintiff's complaint alleges in the alternative that the defendant is a *quasi* public utility. There is however, no law which would subject a business in South Carolina to regulation by the State simply because it is *"quasi"* public in character. There must be a specific statute. Moreover, any attempt to regulate the defendant's cable television business in Richland County, while leaving unregulated the other cable television businesses in South Carolina would be unconstitutional.

Accordingly, it is

*Ordered* that the plaintiff's prayer for an injunction and other relief is denied on the merits and the Complaint is dismissed.

LITTLEJOHN, Justice (concurring and dissenting):

I agree with the majority opinion and with the lower court in holding that Act No. 1161 of the 1972 Acts of the

General Assembly of South Carolina is unconstitutional. I also agree that the Palmetto Cablevision Company is not a public utility.

I am, however, of the opinion that the lower court erred in failing to grant an injunction as prayed for in the complaint. Paragraph 4, subparagraph a, of the complaint alleges:

"4. The aforesaid acts by the defendant are in violation of the laws, statute, and Constitution of the State of South Carolina in the following particulars:

"a. Defendant has not obtained from the plaintiff any grant, franchise or permission of any kind to go upon any public lands, rights-of-way, streets or roads of the county to erect or install such cable television system; and is guilty of encroachment upon the County right-of-way in violation of law."

The answer of the defendant responds to this allegation as follows:

"(a) That as to specification a, defendant has license agreements with the telephone company and the power company to use their poles and rights-of-way and with the South Carolina State Highway Department where necessary to cross State highways underground, and no additional grant of permission from Richland County is necessary, the same has been obtained."

The lower court disposed of the issue raised by this allegation as follows:

"The plaintiff contends that the defendant must obtain the plaintiff's permission to use the public streets and rights-of-way and that the defendant has not done so.

"It appears to the Court that permission from the plaintiff is not required, but even if it is, the plaintiff has given it."

I think the lower court erred in holding ". . . that permission from the plaintiff is not required, . . . ." Mr. Green,

a member of Richland County Council, testified that Richland County requires a person wishing to use its streets, or rights-of-way, to obtain a permit and that the defendant had never applied to Richland County for such a permit. Even though the county has no right to grant a franchise or license to operate cable television, it has the right, if not the duty, to control its properties and its rights-of-way.

The permission relied upon by the defendant and held proper by the lower court is first a letter signed by "C. Laney Talbert, Richland County Supervisor and Chariman, Board of Road Commissioners for Richland County". It was dated March 31, 1972, and addressed to the Manager of Palmetto Cablevision, Inc., the defendant, and reads as follows:

"Dear Mr. Long:

"Palmetto Cablevision, Inc. is granted the right to use all roads and right of ways belonging to Richland County for the purpose of installing and constructing a cable television system in Richland County.

"It is our understanding that, wherever possible your company will utilize existing poles owned by South Carolina Electric & Gas Company and/or Southhern Bell Telephone & Telegraph Company, and that your company has already procured pole attachment agreements with the above referenced utility companies.

"Your Companies (*sic*) authority to utilize these public right of ways is conditioned upon the installation of cable in accordance with all ordinary safety standards as to height, noninterference with vehicular traffic, and all other reasonable safety standards observed by South Carolina Electric and Gas and Southern Bell Telephone and Telegraph."

There is no contention that the letter resulted from the combined action of the "Board of Road Commissioners for Richland County" and accordingly the letter represents the action of the supervisor alone.

In my view, neither Code § 14-254, nor § 30-801, nor § 33-456, relied upon by the lower court, grants to the supervisor authority to convey the rights Mr. Talbert attempted to give the defendant. It is not clear from the record whether the lower court interpreted the right as a permanent easement or merely a temporary privilege. The statutes do not give to the supervisor the right to grant either. Certainly, the instrument does not have the solemnity of an instrument designed to convey an interest in real estate. If the supervisor may grant such privilege to one cablevision company, he may grant it to another and deny it to a third, and I suppose he could revoke the grant at any time. Certainly, he is not authorized to convey an interest in, or privilege to use, county property without compensation.

The defendant, not being a public utility, has no right to require the use of private or public property and the supervisor had no right to give away either an easement or privilege to use.

The lower court further held that ". . . the County Council gave perforce the letter of November 24, 1969 (Defendant's Exhibit) written to the telephone company · stating that Richland County does not have any authority or power with respect to the granting of licenses or franchises for cable television in the unincorporated areas of the County". The letter referred to by the lower court was written by Mr. Fulton, Finance Director for County Council, to the General Transmission and Outside Plant Engineer of Southern Bell Telephone and Telegraph Company. I quote the relevant portions of the letter as follows:

"Dear Mr. Brown:

"Richland County does not have any authority or power with respect to the granting of licenses or franchises for cable television in the unincorporated areas of this county.

"Therefore, no franchise or other permit is required by this County for the installation of CATV Cable."

I would rule that it was error for the lower court to hold that this letter granted to the defendant permission to use any and all of the county's roads, streets and rights-of-way in the promotion of its business.

The complaint also alleges:

"e. Plaintiff is informed and believes that defendant is using rights-of-way of public utility corporations without compensation to the landowners in violation of Article 9, Sections 19 and 20 of the *South Carolina Constitution,* having made contracts with other public utilities to use their rights-of-way in violation of said constitutional provisions."

The lower court held, relying upon the case of *Leppard v. Central Carolina Telephone Co.,* 205 S. C. 1, 30 S. E. (2d) 755, that utility companies involved in this case had the right to permit the defendant to attach its wires to their poles. In *Leppard,* there was involved a public utility. I do not think that this case stands for the proposition that a utility company which acquired a right-of-way for the purpose of serving the public, can grant to a private company (not a utility) the right to use its poles. However, the issue is not one which Richland County is entitled to raise and is a dispute which at most may involve the owner of the land and the public utility involved and the defendant. Therefore, I agree that no injunction should have been granted based on allegation "e" set forth above.

I would reverse the lower court and hold that the defendant should be enjoined from traversing and using Richland County public lands, rights-of-way, streets and roads to install a cablevision system.