635 S.E.2d 538

**Douglas E. GRESSETTE and Mark E. Rudd, on behalf of other persons similarly situated, Appellants,**

v.

**SOUTH CAROLINA ELECTRIC AND GAS COMPANY (SCE & G), Respondent.**

No. 26203.

Supreme Court of South Carolina.

Heard May 23, 2006.

Decided Oct. 2, 2006.

Rehearing Denied Oct. 2, 2006.

William L. Want, of Charleston, and Guyte P. McCord III, of McCord, Busbey & Ketchum, L.L.P., of Tallahassee, FL, for appellants.

John M.S. Hoefer, Mitchell Willoughby, and Noah M. Hicks II, of Willoughby & Hoefer, P.A., of Columbia; John A. Massalon, of Will & Massalon, L.L.C., of Charleston; Stephen A. Spitz, of Charleston; and John M. Mahon, Jr., of SCANA Corporation, of Columbia, for respondent.

Justice MOORE:

Appellants (Landowners) commenced this class action against respondent (SCE & G) for trespass, unjust enrichment, an injunction, and declaratory judgment. Landowners claim SCE & G's conveyance of excess capacity on its fiber optic cables was an improper use of the electric easements granted by Landowners to SCE & G. The trial judge granted SCE & G's motion to dismiss under Rule 12(b)(6), SCRCP. We reverse.

## FACTS

A motion to dismiss pursuant to Rule 12(b)(6) must be based solely on the allegations set forth in the complaint and

we must presume all well-pled facts to be true. *Overcash v. South Carolina Elec. and Gas Co.*, 364 S.C. 569, 614 S.E.2d 619 (2005). The complaint here alleges the following.

Landowners granted easements to SCE & G giving SCE & G "the right to construct, operate, and maintain electric transmission lines and all telegraph and telephone lines ... *necessary or convenient in connection therewith....*"[1] Sometime in the 1990's, SCE & G began installing fiber optic communications lines on its existing poles in these easements. Fiber optic lines do not carry electricity but transmit digital signals. After setting up this communications network,[2] SCE & G began conveying excess fiber optic capacity to third-party telecommunications companies without notice or compensation to Landowners.

Landowners' complaint further alleges that the easements granted to SCE & G do not include the right to apportion any part of these easements to third parties for general telecommunications purposes. Landowners do not contest SCE & G's installation and use of the fiber optic lines for its own internal communications.

For purposes of the motion to dismiss, the trial judge accepted as true the allegation that the language of the easements does not allow third-party communications, but found the written easements were not determinative in light of this Court's precedent in *Lay v. State Rural Electrification Auth.*, 182 S.C. 32, 188 S.E. 368 (1936), *Leppard v. Central Carolina Tel. Co.*, 205 S.C. 1, 30 S.E.2d 755 (1944), and *Richland County v. Palmetto Cablevision*, 261 S.C. 222, 199 S.E.2d 168 (1973). The trial judge concluded these cases stand for the proposition that utility easements "confer a broad right to use the utility easement for additional purposes" and therefore SCE & G's conveyance was authorized as a matter of law.

---

1. Another easement, also annexed to the complaint, has slightly different language and provides "communication wires ... deemed by [SCE & G] to be necessary...."

2. According to counsel at the motion hearing, SCE & G uses the fiber optic lines for communication between substations.

## ISSUE

Does the holder of a utility easement have the right to apportion part of its own use to third-parties as a matter of law and without reference to the written easements?

## DISCUSSION

█ Our resolution of this case rests on our reading of *Lay, Leppard,* and *Palmetto Cablevision.* Since we must presume as true the allegation that the language of the easements does not allow SCE & G to convey use of its fiber optic cable to third parties, the issue is whether these cases allow apportionment of the use of a utility easement as a matter of law despite the language of the written easements.

In *Lay,* a 1936 case, we considered whether the placing of an electric line on a highway easement constituted an additional servitude. At issue was an Act of the General Assembly allowing the Rural Electrification Authority to install electric lines in any public highway. The plaintiff landowners contended it was a taking without compensation to allow this additional servitude of the easements granted to the State "for highway purposes." We held the placement of electric lines in the highway easements did not constitute an additional servitude because communication was within the traditional use of a highway. There was no issue regarding whether the written easements in *Lay* prohibited an apportionment of use to third parties. We simply held the erection of electric lines was not an additional servitude to easements that were granted "for highway purposes."

In 1944, we decided the *Leppard* case which involved § 8531 of the 1932 Code, now S.C.Code Ann. § 58-9-2020 (1977). This section provides:

> Any telegraph or telephone company ... may construct, maintain and operate its line ... under, over, along and upon any of the highways or public roads of the State....

The complaining landowner had previously conveyed "an unqualified right of way" to the State Highway Department. The issue was whether the erection of telephone lines in the highway easement was an additional servitude entitling the landowner to compensation. We followed our earlier decision

in *Lay* and concluded the erection of telephone poles and lines within the highway easement was not an addition servitude and no compensation was due. Again, no restrictive language in the underlying easement was involved.

The third case, *Palmetto Cablevision*, was decided in 1973. *Palmetto Cablevision* did not involve private landowners but was an action by Richland County (County) essentially seeking to assert County's authority over cable television services. Cablevision had an agreement with a telephone company to use the telephone company's poles and rights-of-way and was required under the terms of that agreement to obtain consent from the State and private landowners, but not from County.

We found County's permission to use these easements was not required and, even if it was, the facts indicated such permission was actually given. 199 S.E.2d at 172. We held that the telephone company's easement was very broadly defined by statute and the stringing of additional cables for newly conceived communication uses was authorized without County's permission.[3] 199 S.E.2d at 173. In essence, we found the television cables did not constitute an additional servitude on the underlying telephone easements. Again, the case did not involve restrictive language in the easements.[4]

SCE & G would have us read these three cases as standing for the proposition that the use of a utility easement may be apportioned as a matter of law without reference to the language of the easement itself. We disagree.

First, *Lay*, *Leppard*, and *Palmetto Cablevision*, while settling the issue of an additional servitude, did not involve restrictions on the apportionment of an allowed use. As other courts have noted, the issue of apportionment is a slightly different issue from that of additional servitude. Where an easement is granted for some category of use, for instance

---

3. Justice Littlejohn dissented from the majority's holding on this issue and would have held that County's permission was required because anyone wishing to use County's streets must first obtain a permit. 199 S.E.2d at 176.

4. Nor did the case involve a challenge by private owners of the servient estates. As Justice Littlejohn noted in concurrence, County had no right to raise the issue of just compensation due to private landowners. 199 S.E.2d at 177.

"highway purposes," the question of an additional servitude addresses whether some new use fits within that category of allowed use, a question that may turn simply on an evaluation of the new use rather than an interpretation of the easement's language. Apportionment, on the other hand, involves the interpretation of a restriction on the easement holder's conveyance of part of its own allowed use to a third party. *See Jackson v. City of Auburn,* 2006 WL 893617 at *9 (Ala.Civ. App.2006) (use of fiber optic line in electric easement may be apportioned when language in instrument indicates right to apportion and when apportionment is not additional servitude); *City of Orlando v. MSD–Mattie, L.L.C.,* 895 So.2d 1127 (Fla.App.2005) (use of fiber optic cable not an additional servitude but cannot be apportioned under language of instrument granting easement); *McDonald v. Mississippi Power Co.,* 732 So.2d 893 (Miss.1999) (same); *see also Lighthouse Tennis Club Village Horizontal Prop. Regime LXVI v. South Island Pub. Serv. Dist.,* 355 S.C. 529, 586 S.E.2d 146 (Ct.App. 2003) (holding that language of easement restricted use of easement).

Here, there is no real issue of an additional servitude—Landowners concede the fiber optic lines are within the use allowed under the terms of the easements. Rather the issue is whether SCE & G may apportion its allowed use to third parties. This is clearly an issue that cannot be resolved without construing the instruments granting the easements in question. It is well-settled that the rights of an easement holder depend upon the interpretation of the grant in the easement. *Patterson v. Duke Power Co.,* 256 S.C. 479, 183 S.E.2d 122 (1971). Moreover, were we to read our earlier decisions as broadly as SCE & G suggests, the owner of a servient estate could never limit the grant of a utility easement, no matter how specific the language in the easement.

Further, SCE & G argues it can apportion its use of the easements to third parties because the easements in question are commercial easements in gross which are alienable as a matter of law. This is not entirely correct. Even with such an easement, the court will look at the language of the easement to determine whether there was an intention to attach the attribute of assignability by the use of such language as "to his heirs and assigns." *Sandy Island Corp. v.*

*Ragsdale,* 246 S.C. 414, 143 S.E.2d 803 (1965) (parties may make an easement in gross assignable by the terms of the instrument; commercial easement in gross assignable where language included "successors and assigns"); *Douglas v. Medical Investors, Inc.,* 256 S.C. 440, 182 S.E.2d 720 (1971) (commercial easement in gross assignable where instrument included "his heirs and assigns"). Here, the easements attached to Landowners' complaint do state a conveyance to SCE & G and "its successors and assigns." While this language indicates assignability, the language limiting the use of the easement to communications necessary to SCE & G's business appears to restrict that assignability. This ambiguity requires construction of the written easements themselves.

The trial judge's order dismissing Landowners' complaint is **REVERSED.**

WALLER, BURNETT, PLEICONES, JJ., and Acting Justice JAMES W. JOHNSON, JR., concur.