746 S.E.2d 329

**Rocky DISABATO, d/b/a Rocky D., Appellant,**

**v.**

**SOUTH CAROLINA ASSOCIATION OF SCHOOL ADMINISTRATORS, Respondent. State ex rel. Alan Wilson, Attorney General, Intervenor.**

**Appellate Case No. 2011–198146.**

**No. 27286.**

Supreme Court of South Carolina.

Heard Oct. 3, 2012.
Decided July 17, 2013.

434

436

438

Kevin A. Hall, Karl S. Bowers, Jr., and M. Todd Carroll, of Womble, Carlyle, Sandridge, & Rice, LLP, of Columbia, for Appellant.

Kenneth L. Childs, John M. Reagle, and Keith R. Powell, of Childs & Halligan, PA, of Columbia, for Respondent.

Attorney General Alan McCrory Wilson, Solicitor General, Robert D. Cook and Deputy Solicitor General J. Emory Smith, Jr., Columbia, for Intervenor.

Scott Thomas Price, of Columbia, for Amicus Curiae, South Carolina School Boards Association.

Jerald A. Jacobs, of Pillsbury Winthrop Shaw Pittman, LLP, of Washington, DC, for Amicus Curiae, American Society of Association Executives.

Jerry Jay Bender, of Baker, Ravenel & Bender, LLP, of Columbia, for Amicus Curiae, South Carolina Press Association and South Carolina Broadcasters Association.

Marsha A. Ward, of Atlanta, GA, for Amicus Curiae, The Student Press Law Center and Reporters Committee for Freedom of the Press in Support of Petitioner Rocky Disabato.

JUSTICE HEARN:

This case requires us to reconcile two competing principles of our democratic tradition. First, embodied in the South Carolina Freedom of Information Act, Title 30, Chapter 4 of the South Carolina Code (the FOIA), is the principle of an open, transparent system of government, vital to maintaining an informed electorate and preventing the secret exercise of governmental power with its potential corruption. Juxtaposed against this principle are the rights of citizens to freely speak and associate embodied in the First Amendment to the United States Constitution. We must decide whether the FOIA as applied to the South Carolina Association of School Administrators (SCASA), a non-profit corporation engaged in political advocacy, unconstitutionally infringes upon SCASA's First Amendment speech and association rights. We hold the FOIA does not violate those rights and reverse the circuit court's order granting SCASA's motion to dismiss.

## FACTUAL/PROCEDURAL BACKGROUND

SCASA is a non-profit, South Carolina corporation whose purpose is to advocate on legislative and policy issues impacting education. In August of 2009, Rocky Disabato sent SCA-

SA a request for information pursuant to the FOIA.[1] The Executive Director of SCASA sent Disabato a response in which she refused to produce any of the requested materials and asserted that SCASA is not a public entity subject to the FOIA.

Thereafter, Disabato filed a complaint in circuit court seeking a declaration that SCASA violated the FOIA by refusing to comply with his request as well as an injunction requiring SCASA to comply with the FOIA. SCASA filed a motion to dismiss the action pursuant to Rule 12(b)(6), SCRCP, on the grounds that, when the FOIA is applied to a public body that is a non-profit corporation engaged in political advocacy, the FOIA unconstitutionally violates the First Amendment rights of speech and association.[2]

In ruling on the motion to dismiss, the circuit court assumed that SCASA is supported by public funds, is a public body subject to the FOIA, and is a corporation engaged in political speech and issue advocacy. The court first held that the FOIA burdens SCASA's First Amendment speech and association rights, and then reviewed the constitutionality of the FOIA using a combination of the exacting and strict scrutiny standards of review. In its order dismissing Disabato's complaint, the court stated that "[t]he FOIA's broad definition of

---

1. Disabato's letter stated in pertinent part:

 Pursuant to the South Carolina Freedom of Information Act, I hereby request that you provide me with a copy of all emails, letters, memos, documents, and other records possessed or maintained by the South Carolina Association of School Administrators that discuss both the American Recovery and Reinvestment Act of 2009 and Governor Mark Sanford, including but not limited to any references to the lawsuit filed by your organization against Gov. Sanford in May 2009. I also request that you provide me with a copy of any record that reflects all telephone calls made by or received by your organization and its staff, including the staff members' cell phones, from January 1, 2009 to July 31, 2009. Your response is due within fifteen days.

2. SCASA's brief asserts that it also moved to dismiss the complaint on the grounds that application of the FOIA to SCASA violates Article 1, Section 2 of the South Carolina Constitution which provides for the "freedom of speech." S.C. Const. art. I, § 2 (1976). However, the record is devoid of any mention of Article 1, Section 2, and therefore, the issue is not before us. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal. . . .").

'public body' can only be sustained as constitutional if the FOIA's open meeting and records disclosure requirements are substantially related to a sufficiently important governmental purpose and no less restrictive means of achieving this purpose exists." The court held the FOIA as applied to SCASA does not meet that standard because the disclosure and open meetings requirements are not substantially related to the purposes of the statute and because a less restrictive means of achieving the statute's purposes exists. Accordingly, the court held the FOIA violates SCASA's First Amendment speech and association rights and granted the motion to dismiss. This appeal followed.

## ISSUES PRESENTED

I. Is SCASA a "public body" subject to the South Carolina Freedom of Information Act?

II. Does application of the FOIA to SCASA violate SCASA's First Amendment speech and association rights as incorporated through the Fourteenth Amendment?

## STANDARD OF REVIEW

■■■ A claim may be dismissed when the defendant demonstrates that the plaintiff has failed to allege facts sufficient to establish a cause of action. Rule 12(b)(6), SCRCP. We review the grant of dismissal according to the same standard applied by the circuit court. *See Williams v. Condon,* 347 S.C. 227, 233, 553 S.E.2d 496, 500 (Ct.App.2001). A ruling on a motion to dismiss pursuant to Rule 12(b)(6) must be based solely on the factual allegations set forth in the complaint, and the court must consider all well-pled allegations as true. *Gressette v. S.C. Elec. & Gas Co.,* 370 S.C. 377, 378–79, 635 S.E.2d 538, 538 (2006).

■■■ The Supreme Court has a limited scope of review in considering constitutional challenges to statutes. *Joytime Distribs. & Amusement Co. v. State,* 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999). The Court presumes that all statutes are constitutional and will, if possible, construe a statute so as to render it constitutional. *Davis v. Cnty. of Greenville,* 322 S.C. 73, 77, 470 S.E.2d 94, 96 (1996).

## LAW/ANALYSIS

Our General Assembly enacted the FOIA based on the premise "that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy." S.C.Code Ann. § 30–4–15 (2007). In furtherance of that purpose, the FOIA subjects a "public body" to record disclosure and open meeting requirements.

Among those entities defined as a public body subject to the statute are "any organization, corporation, or agency supported in whole or in part by public funds or expending public funds. . . ." S.C.Code Ann. § 30–4–20(a). We held in *Weston v. Carolina Research & Development Foundation*, 303 S.C. 398, 401 S.E.2d 161 (1991), that the statute's unambiguous language brings even a private corporation supported by public funds within the definition of a public body. *Id.* at 403, 401 S.E.2d at 164. We further clarified that holding, stating:

> this decision does not mean that the FOIA would apply to business enterprises that receive payment from public bodies in return for supplying specific goods or services on an arm['.]s length basis. In that situation, there is an exchange of money for identifiable goods or services and access to the public body's records would show how the money was spent. However, when a block of public funds is diverted *en masse* from a public body to a related organization, or when the related organization undertakes the management of the expenditure of public funds, the only way that the public can determine with specificity how those funds were spent is through access to the records and affairs of the organization receiving and spending the funds.

*Id.* at 404, 401 S.E.2d at 165.

The FOIA's record disclosure requirement provides that "any person has a right to inspect or copy any public record of a public body" subject to certain exceptions. S.C.Code Ann. § 30–4–30(a). A public body must provide any requested records within fifteen days of a request, and the body may collect fees to cover the costs of searching for and producing records. S.C.Code Ann § 30–4–30(b)—(c). Additionally, the

FOIA's open meetings requirement provides that all meetings of public bodies must be open to the public, subject to limited exceptions. S.C.Code Ann. § 30-4-60. A public body must provide advance notice of all meetings and keep written minutes which must include statutorily specified information. S.C.Code Ann. §§ 30-4-80 & 30-4-90. Finally, the FOIA provides that any citizen of the State may seek a declaratory judgment and injunctive relief to enforce the provisions of the FOIA, and willful violations of the FOIA are a misdemeanor subject to punishment by a fine or imprisonment. S.C.Code Ann. §§ 30-4-100 & 110.

## I. PUBLIC BODY

As an initial matter, Disabato asks us to declare that SCASA is a public body subject to the FOIA. However, SCASA's motion to dismiss did not challenge the sufficiency of Disabato's allegation that SCASA is a public body. Therefore, the issue is not before us. The allegations in Disabato's complaint, if true, may or may not be enough to establish that SCASA is a public body for purposes of the FOIA; however, a judicial declaration that SCASA is a public body must be based upon evidence, not on mere allegations. Therefore, the issue of whether SCASA is a public body can only be resolved after the parties have engaged in discovery, and at this procedural stage, we assume, but do not decide, that SCASA is a public body.

## II. FIRST AMENDMENT CHALLENGE

The only issue before us is whether the application of the FOIA to SCASA is an unconstitutional infringement upon SCASA's First Amendment speech and association rights. Disabato contends that the FOIA does not impact SCASA's First Amendment rights in any way, and thus, we need not consider the FOIA's constitutionality under the First Amendment. Disabato also contends that even if the FOIA does impact SCASA's First Amendment rights, the FOIA does not unconstitutionally infringe upon those rights.

Accordingly, we must engage in a two-step analysis of SCASA's challenge. Initially, we must determine whether the FOIA impacts SCASA's speech and association rights, and if we conclude it does, we must then determine whether it is an

unconstitutional infringement of SCASA's rights. *See, e.g., Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (first concluding that the challenged law implicated First Amendment rights before proceeding to consider the constitutionality of the law). We conclude that while the FOIA does impact upon SCASA's speech and association rights, the First Amendment is not violated.

## A. The FOIA's Impact on SCASA's First Amendment Rights

### 1. Freedom of Speech

 Among the protections afforded by the First Amendment against state action is the right to not speak publicly.[3] *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 559, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). Affording persons a right to speak in private furthers the interests in enabling and promoting speech behind the First Amendment. *Id.* Persons may not be willing to express some speech in public, for example dissident beliefs or personal information, and thus, such speech would be stifled were persons not able to express it in private.

By requiring that all meetings be open to the public, the FOIA prevents private oral communication among SCASA's members. The records disclosure requirement prevents private written communications because any such communications are subject to public disclosure. Thus, the FOIA implicates SCASA's right to not speak publicly.

### 2. Freedom of Association

 The United States Supreme Court has interpreted the First Amendment as encompassing an implicit right to associate for the purpose of engaging in speech and the other activities protected by the First Amendment.[4] *Roberts v. U.S.*

---

**3.** The freedom of speech found in the First Amendment is a fundamental right, and thus, the First Amendment's prohibition against laws abridging the freedom of speech applies against the states through the Fourteenth Amendment. *Thornhill v. Alabama,* 310 U.S. 88, 95, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

**4.** The freedom of association implicit in the First Amendment is a fundamental right, and thus, like the freedom of speech, the First

*Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). The right to associate is recognized due to the inextricable link between association and the enumerated rights of the First Amendment and the role of association in facilitating self-governance. *See NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (noting the "close nexus between the freedoms of speech and assembly"); Ashutosh Bhagwat, *Associational Speech,* 120 Yale L.J. 978, 993 (2011) (discussing the rationale for recognizing a right to associate). By associating, persons can increase the strength and visibility of their views, and are accordingly better able to communicate those views to their representatives in government. *See Patterson,* 357 U.S. at 460, 78 S.Ct. 1163 ("The effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association. . . ."). Thus, for the freedom to speak on political issues to have any substance, people must be able to associate in order to make their common views heard.

▮▮▮ Among the protections afforded by the freedom of association are the rights to not associate, to privacy in one's associations, and to be free from governmental interference with the internal affairs and organization of one's associations. *Roberts,* 468 U.S. at 622–23, 104 S.Ct. 3244. The FOIA implicates SCASA's right to associational privacy both by requiring that SCASA's meetings be open to the public and by requiring SCASA to disclose records including membership lists. More importantly, the FOIA's open meeting requirement impairs SCASA's ability to effectively associate for the purpose of political and issue advocacy. By requiring that all meetings be open to the public, the provision essentially demands that SCASA conduct all of its associational activities with members of its opposition present. We recognize that the ability of a group such as SCASA to formulate a strategy for political advocacy may be diminished by the presence of persons opposed to the organization's views because the members' ability to freely and openly debate their views may be chilled. As a result, an organization that cannot deliberate

---

Amendment's protection against the abridgement of the freedom of association applies against the states through the Fourteenth Amendment. *See NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460–66, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

internally over its strategy and message has a weakened ability to meaningfully associate. *See Perry v. Schwarzenegger*, 591 F.3d 1126, 1142 n. 9 (9th Cir.2009) (holding that an organization's ability to engage in internal deliberations on strategy is a component of the freedom of association). Thus, the FOIA implicates SCASA's right to associate by interfering with its ability to deliberate internally and by removing any associational privacy.

In conclusion, the FOIA impacts SCASA's freedoms of speech and association. However, simply because a statute negatively affects a constitutional right does not mean the statute unconstitutionally infringes that right. Instead, courts assess the constitutionality of a statute by selecting the appropriate level of scrutiny and subjecting the statute to that scrutiny. If a statute satisfies the appropriate level of scrutiny, it is constitutional despite its impacts upon a constitutional right. Accordingly, while we agree with the circuit court that the FOIA burdens SCASA's First Amendment rights of speech and association, we must now determine the appropriate level of scrutiny in order to determine whether that infringement is unconstitutional.

## B. Level of Scrutiny

First, Disabato contends the circuit court erred in selecting an exacting scrutiny or strict scrutiny standard as the appropriate standard. We agree.

The circuit court misapprehended the United States Supreme Court's recent decisions in *John Doe No. 1 v. Reed*, —— U.S. ——, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010) and *Citizens United v. FEC*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), in holding that those decisions dictate the appropriate standard of review to be applied here. In *Reed* and *Citizens United*, the Court considered First Amendment challenges to disclosure requirements related to elections, and reviewed those requirements under an exacting scrutiny standard. Exacting scrutiny is a special level of scrutiny applied only in election disclosure cases, and it falls somewhere "in the gray area between strict scrutiny and deference under rational basis review." Anthony Johnstone, *A Madisonian Case for Disclosure*, 19 Geo. Mason L.Rev. 413, 425 (2012). To satisfy

exacting scrutiny there must be a substantial relationship between the disclosure requirement and a sufficiently important governmental interest. *Reed,* 130 S.Ct. at 2818. While the *Reed* and *Citizens United* decisions involved disclosure requirements and the FOIA requires disclosure, those decisions made clear they were applying exacting scrutiny because the First Amendment challenges were made in the election context. *See Reed,* 130 S.Ct. at 2818; *Citizens United,* 558 U.S. at 366–71, 130 S.Ct. 876. Here, the First Amendment challenge to the FOIA is not a challenge in the electoral context, and thus, exacting scrutiny is not applicable.[5]

 Outside the context of electoral disclosure requirements, the level of scrutiny applied to a statute that affects speech depends on whether the statute is content-based or content-neutral in relation to the affected speech. Content-based statutes are subjected to strict scrutiny, whereas content-neutral statutes are subjected to intermediate scrutiny. *See Republican Party of Minnesota v. White,* 536 U.S. 765, 774–75, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (finding a statute was content-based and applying strict scrutiny); *Turner Broad. Sys., Inc. v. F.C.C.,* 520 U.S. 180, 189, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997) (finding a statute was content-neutral and applying intermediate scrutiny). A statute will be upheld under intermediate scrutiny despite its impact on speech if it serves important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests. *Turner,* 520 U.S. at 189, 117 S.Ct. 1174. To survive strict scrutiny, a statute must serve a compelling state interest and be narrowly tailored to serve that interest. *White,* 536 U.S. at 774–75, 122 S.Ct. 2528.

---

5. Additionally, we note that even if *Reed* and *Citizens United* supplied the appropriate standard of review, the circuit court misstated that standard. The circuit court stated the exacting scrutiny standard— "substantially related to a sufficiently important governmental purpose"—and then tacked on the additional requirement that "no less restrictive means of achieving this purpose exists." The requirement that there be no less restrictive means is a component of strict scrutiny, the highest standard of review. *See United States v. Playboy Entm't Grp., Inc.,* 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000).

The United States Supreme Court supplied the following guidance for distinguishing content-based statutes from content-neutral statutes:

> The principal inquiry in determining content-neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is *"justified* without reference to the content of the regulated speech."

*Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting *Clark v. Cmty. for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)) (citations omitted).

The language of the FOIA contains no indication that it is intended to or does distinguish between speech or that it places a greater burden on any particular message. Rather, the FOIA equally burdens all public bodies regardless of the content of their speech. Moreover, the State's purpose in enacting the FOIA, as expressed by the General Assembly, was to strengthen our democracy, a purpose unrelated to the content of the expression. Thus, we conclude the statute is content-neutral and the intermediate scrutiny standard applies.

▆▆▆▆ Turning to the freedom of association, when a statute severely affects associational rights, such as when an organization is required to accept a member it does not desire, strict scrutiny applies. *Clingman v. Beaver,* 544 U.S. 581, 586, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005); *see also Boy Scouts of Am. v. Dale,* 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000) (applying strict scrutiny where an association was forced to accept a member it did not desire). However, when a statute only incidentally affects associational rights, it is subject to the more permissive *Clingman* standard. *Clingman,* 544 U.S. at 586–87, 125 S.Ct. 2029. Under that standard, the statute is constitutional, provided it serves an

important governmental interest and is a reasonable and nondiscriminatory restriction on association. *Id.*

Considering the FOIA's impacts upon SCASA's right to associate, we find it only incidentally affects that right. It does not bar public bodies from exercising their associational rights, nor does it require them to admit members they do not desire. Rather, the FOIA only indirectly impacts SCASA's associational rights by burdening its ability to effectively associate through the requirement that it open its meetings to the public.

Also, while the FOIA burdens SCASA's members' right to privacy or anonymity in their associations, the United States Supreme Court has indicated that right only merits strong constitutional protection where disclosure of one's association creates a risk of harassment or reprisal. In *Patterson,* the Court recognized the importance of associational privacy but noted that its importance depends upon the circumstances, including whether the association expresses dissident beliefs. *Patterson,* 357 U.S. at 462, 78 S.Ct. 1163. There, the NAACP established that its members had been subjected to economic reprisals and threats of physical harm when their memberships in the association were made public. *Id.* at 462, 78 S.Ct. 1163. In light of those circumstances, the Court held the NAACP's right to associational privacy could only be constitutionally overcome by a compelling state interest. *Id.* at 463, 78 S.Ct. 1163. Subsequently, in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Court held the *Patterson* decision was inapposite where there was not actual or threatened harassment similar to that in the *Patterson* case. *Id.* at 70, 96 S.Ct. 612. More, recently, in *Reed,* the Court stated that an individual can prevail on a claim that a statute unconstitutionally interferes with his right to associational privacy if he can establish to a reasonable probability that disclosure of information identifying him as a member of the association would cause him to suffer threats, harassment, or reprisals. *Reed,* 130 S.Ct. at 2820, 130 S.Ct. 2811. Here, the record is devoid of any claim that SCASA expresses dissident beliefs or that its members would suffer threats, harassment, or reprisal if their membership in SCASA was to be disclosed to the public.

Therefore, we conclude the FOIA's impacts on SCASA's associational rights are subject to the lesser standard of review established in *Clingman* whereby a reasonable and nondiscriminatory restriction on association that furthers an important governmental interest is constitutionally permissible. While that standard has not been precisely located within the usual tripartite system of constitutional review—rational basis, intermediate scrutiny, and strict scrutiny—we conclude that it is equivalent to intermediate scrutiny. Like intermediate scrutiny, the *Clingman* standard requires an important governmental interest. The *Clingman* standard also requires that the restriction be nondiscriminatory. Similarly, intermediate scrutiny requires that the restriction be nondiscriminatory because it is only applied to content-neutral restrictions on the freedom of speech and specifically requires an interest unrelated to the suppression of speech. Finally, the *Clingman* standard's requirement that the restriction be reasonable is presumably the equivalent of the intermediate scrutiny standard's requirement that the challenged law not burden substantially more speech than necessary.

Accordingly, we will employ the intermediate scrutiny standard. If the FOIA satisfies the intermediate scrutiny standard, it also satisfies the *Clingman* standard.

## C. Constitutionality

Finally, we must determine whether the FOIA's impacts on SCASA's speech and association rights are constitutionally permissible by considering whether the FOIA serves important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to advance those interests.

The FOIA serves the important governmental interests of providing transparency in governmental decision-making, preventing fraud and corruption, and fostering trust in government. An informed electorate is essential to a healthy democracy because members of the public cannot meaningfully cast their votes if they are ignorant of what actions the government has taken and the rationale for those actions. Furthermore, secret government activity creates fertile ground for fraud and corruption, especially in the area of

public expenditures where, without transparency, the public can be kept unaware of misappropriations and conflicts of interest. As Justice Brandeis wrote, "[p]ublicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." L. Brandeis, *Other People's Money* 62 (National Home Library Foundation ed.1933). Finally, regardless of whether governmental activity conducted in secrecy actually is nefarious or corrupt, the public cannot be expected to possess a high level of trust in that which is hidden from its view. The General Assembly specifically addressed these interests in the FOIA's legislative findings, and numerous states have made similar findings when enacting freedom of information laws similar to South Carolina's FOIA.

The interests giving rise to the FOIA, and recognition of their foundational role in our democracy, trace back to the earliest days of our nation. As James Madison wrote, "A popular government, without popular information or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or perhaps both. Knowledge will forever govern ignorance; And a people who mean to be their own governors, must arm themselves with the power which knowledge gives." Letter from James Madison to W.T. Barry (Aug. 4, 1822), reprinted in *The Complete Madison* 337 (S. Padover ed.1953). John Marshall also acknowledged these interests in Virginia's convention on the adoption of the federal constitution, recognizing the importance of secrecy in some governmental matters, but cautioning that secrecy should be employed only "when it would be fatal and pernicious to publish the schemes of government." 3 Debates in the Several State Conventions on the Adoption of the Federal Constitution 233 (J. Elliot ed.1901). *See also* Patricia M. Wald, *The Freedom of Information Act*, 33 Emory L.J. 649, 652–54 (1984) (discussing the historical background of freedom of information laws).

Furthermore, in similar cases, courts have repeatedly recognized the importance of these interests and found them sufficient to permit similar intrusions upon First Amendment rights. Most recently, in *Reed*, the United States Supreme Court considered a First Amendment challenge to the disclosure of referendum petition signatures pursuant to the Washington Public Records Act (PRA). The PRA provided that all

public documents were to be made available to the public for inspection and copying. 130 S.Ct. at 2816. One of the petitioners, an advocacy group, collected and submitted signatures to the state in support of holding a referendum on a recently enacted state law. *Id.* The respondents then filed requests pursuant to the PRA for copies of the petitions and declared their intent to publish the names of the signers online. *Id.* The petitioners filed suit and a motion for a preliminary injunction on the grounds the PRA, as applied to the referendum petitions, violated the First Amendment. *Id.* at 2816–17. The district court granted the petitioners a preliminary injunction, the United States Court of Appeals for the Ninth Circuit reversed, and the Supreme Court granted certiorari. *Id.* at 2817. The Supreme Court found the state's interests in eliminating fraud in the electoral process and ensuring governmental transparency and accountability satisfied the exacting scrutiny standard. *Id.* at 2819. Thus, the *Reed* decision is particularly instructive both because it establishes that public records disclosure acts can survive a level of scrutiny more restrictive than the intermediate scrutiny applicable here and establishes that a state's interests in promoting governmental transparency and accountability and in preventing fraud and corruption are strong governmental interests.

The United States Supreme Court also considered disclosure requirements in *Citizens United.* In that case, the plaintiff asserted a First Amendment challenge to portions of the federal Bipartisan Campaign Reform Act of 2002 that required disclosure of who created and funded a political advertisement and the election at which the advertisement was directed. 558 U.S. at 366, 130 S.Ct. 876. Upholding the disclosure requirements under the exacting scrutiny standard, the Court again emphasized the governmental interest in transparency, noting the transparency provided by the disclosures "enables the electorate to make informed decisions and give proper weight to different speakers and messages." *Id.* at 371, 130 S.Ct. 876.

Additionally, in *Asgeirsson v. Abbott,* 773 F.Supp.2d 684 (W.D.Tex.2011), *aff'd,* Case No. 11–50441, 696 F.3d 454 (5th Cir. Sept. 25, 2012), the plaintiffs contended the Texas Open Meetings Act violated the First Amendment. The Act, similar to the open meeting requirement of South Carolina's FOIA, required governmental bodies to hold their meetings open to

the public when discussing public business. *Id.* at 690. The court concluded that intermediate scrutiny was applicable because the statute was content-neutral. *Id.* at 695. The court then held the Act served three compelling interests—providing transparency, preventing fraud and corruption, and fostering trust—and survived intermediate scrutiny. *Id.* at 701–02.

Similarly, the Minnesota Supreme Court, considering a First Amendment challenge to an open meetings law, held the law served the compelling state interests of informing the electorate and allowing the public to express their views. *St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Sch.*, 332 N.W.2d 1, 7 (Minn.1983). Accordingly, the court held the open meetings law did not unconstitutionally interfere with the First Amendment rights of speech and association. *Id.*

The Colorado Supreme Court also upheld an open meetings law under a First Amendment challenge, finding the law served the important governmental interest of the public's right to access public information. *Cole v. State*, 673 P.2d 345, 350 (Colo.1983). The court, elaborating on that interest, noted that information concerning governmental actions is a necessary prerequisite of self-government and ensuring public access to such information promotes accountability. *Id.*

Additionally, the longstanding, universal adoption of freedom of information laws by the federal and state governments supports the conclusion that such laws advance important governmental interests. The federal government enacted its Freedom of Information Act in 1966. *See* Act of September 6, 1966, Pub.L. No. 89–554, 80 Stat. 383 (codified at 5 U.S.C. §§ 552–559 (1970)). The Act requires federal agencies to both produce records for public inspection and conduct their meetings open to the public. 5 U.S.C. §§ 552, 552b. Every state and the District of Columbia has also adopted a freedom of information law requiring the disclosure of public records and open meetings.[6]

We also find the FOIA does not burden substantially more speech than necessary to further those interests. The FOIA exempts certain sensitive records and meetings from public

6. Ala.Code §§ 36–12–40 & 36–25A–1–11; Alaska Stat. §§ 40.25.100–.295 44.62.310–.319; Ariz.Rev.Stat. Ann. §§ 38–431–431.09 & 39–121–128; Ark.Code Ann. §§ 25–19–101–110; Cal. Gov't Code §§ 54950–

disclosure, and thus attempts to only implicate that speech and association necessary to serve its purposes. *See* S.C.Code Ann. § 30–4–40 (Supp.2011) (exempting certain records from public disclosure); S.C.Code Ann. § 30–4–70 (exempting certain meetings from the open meetings requirement). For example, "correspondence or work products of legal counsel for a public body" are exempted from public disclosure, S.C.Code Ann. § 30–4–40(a)(7), and "[d]iscussion of employment, appointment, compensation, promotion, demotion, discipline, or release of an employee" is exempted from the open meetings requirement, S.C.Code Ann. § 30–4–70(a)(1).

Of course, the main thrust of SCASA's challenge to the FOIA is that it applies beyond traditional governmental entities to all public bodies, including non-profit corporations engaged in political advocacy. However, the application of the FOIA beyond traditional governmental entities is limited to

54963 & 6250–6270; Colo.Rev.Stat. §§ 24–6–401–402 & 24–72–201–206; Conn. Gen.Stat. §§ 1–210 & 1–225; Del.Code Ann. tit. 29, §§ 10001–10006, 10112; D.C.Code §§ 2–532 & 2–571–580; Fla. Stat. §§ 119.01 & 286.011; Ga.Code Ann. §§ 50–14–1 & 50–18–70–77; Haw. Rev.Stat. §§ 92–3 & 92F–1–119; Idaho Code Ann. §§ 9–338 & 67–2340–2346; 5 Ill. Comp. Stat. 120/1–7.5 & 140/1–11.5; Ind.Code §§ 5–14–1.5–1–8 & 5–14–3–1–10; Iowa Code §§ 21.1–.11 & 22.1–.14; Kan. Stat. Ann. §§ 45–215–250 & 75–4317–4320c; Ky.Rev.Stat. Ann. §§ 61.800–.884; La.Rev.Stat. Ann. §§ 42:11–28 & 44:1–57; Me.Rev. Stat. Ann. tit. 1, § 400–521; Md.Code Ann., State Gov't §§ 10–501–512 & 10–611–630; Mass. Gen. Laws ch. 30A, §§ 18–25 & ch. 66A, §§ 1–3; Mich. Comp. Laws §§ 15.231–.246 & 15.261–.275; Minn.Stat. §§ 13.03 & 13D.01–.07; Miss.Code Ann. §§ 25–41–1–17 & 25–51–3; Mo.Rev.Stat. §§ 109.180 & 610.010–.022; Mont.Code Ann. §§ 2–3–201–221 & 2–6–101–112; Neb.Rev.Stat. §§ 84–712–712.09 & 84–1407–1414; Nev.Rev.Stat. §§ 239.001–.030 & 241.010–.040; N.H.Rev.Stat. Ann. § 91–A:1–9; N.J. Stat. Ann. §§ 10:4–1–21 & 47:1A–1–13; N.M. Stat. §§ 10–15–1–4 & 14–2–1–23; N.Y. Pub. Off. Law §§ 87–90 & 100–111; N.C. Gen.Stat. §§ 132–1–10 & 143–318.9–.18; N.D. Cent.Code §§ 44–04–18–19; Ohio Rev.Code Ann. §§ 121.22 & 149.43; Okla. Stat. tit. 25, §§ 301–314 & tit. 51, §§ 24A.1–.29; Or.Rev.Stat. §§ 192.410–.505 & 192.630; 65 Pa. Cons.Stat. Ann. §§ 67.101–.3104 & 701–716; R.I. Gen. Laws §§ 38–2–1–15 & 45–3–7; S.D. Codified Laws §§ 1–25–1–10 & 1–27–1–46; Tenn.Code Ann. §§ 8–44–101–201 & 10–7–503–506; Tex. Gov't Code Ann. §§ 551.001–.146 & 552.001–.353; Utah Code Ann. §§ 52–4–101–305 & 63G–2–101–901; Vt. Stat. Ann. tit. 1, §§ 310–320; Va.Code Ann. §§ 2.2–3700–3714; Wash. Rev.Code §§ 42.30.010–.920 & 42.56.070; W. Va.Code §§ 6–9a–1–12 & 29B–1–1–7; Wis. Stat. §§ 19.21–.39 & 19.81–.98; Wyo. Stat. Ann. §§ 16–4–201–205 & 16–4–401–408.

statutorily defined public bodies, which are only those entities supported by public funds. *Weston,* 303 S.C. at 403, 401 S.E.2d at 164. The FOIA also serves these important governmental interests when applied to such entities due to the importance of ensuring transparency and accountability in the expenditure of public funds. We previously recognized in *Weston* that the FOIA is ineffectual if it does not extend to such bodies, explaining that when an entity receives public funds *en masse* or manages the expenditure of public funds, "the only way that the public can determine with specificity how those funds were spent is through access to the records and affairs of the organization receiving and spending the funds." *Id.* at 404, 401 S.E.2d at 165. If public bodies were not subject to the FOIA, governmental bodies could subvert the FOIA by funneling State funds to nonprofit corporations so that those corporations could act, outside the public's view, as proxies for the State. Moreover, South Carolina is not alone in extending its FOIA to cover entities beyond the traditional governmental entities based on the receipt of public funds.[7] Several states—Arkansas, Kansas, North Dakota, Virginia, and West Virginia—use nearly identical language in providing that any entity that receives public funds is subject to their freedom of information laws.

---

7. *See* Ark.Code Ann. §§ 25–19–103(4) (defining "public meetings" as including the meetings of "all other boards, bureaus, commissions, or organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds") & (5)(A) (defining "public records" as including records of the activity of "any other agency or improvement district that is wholly or partially supported by public funds"); Ga.Code Ann. § 50–14–1 (defining a "public agency" subject to the statute as including "[a]ny nonprofit organization to which there is a direct allocation of tax funds made by the governing body of any agency as defined in this paragraph which constitutes more than 33 percent of the funds from all sources of such organization"); Kan. Stat. Ann. § 45–217 (defining a "public agency" subject to the statute as "any other entity receiving or expending and supported in whole or in part by the public funds appropriated by the state or by public funds of any political or taxing subdivision of the state"); Ky.Rev.Stat. Ann. § 61.870 (providing that the state's open records law applies to "[a]ny body which, within any fiscal year, derives at least twenty-five percent (25%) of its funds expended by it in the Commonwealth of Kentucky from state or local authority funds."); Mich. Comp. Laws § 15.232 (defining a "public body" subject to the act as including "[a]ny other body ... which is primarily funded by or through state or local authority"); N.D. Cent.Code § 44–04–17.1(13) (defining a "public enti-

While we respect the dissent's concern about the scope of the FOIA's application, we believe the dissent overlooks the limited application of the FOIA to non-governmental entities. Examined in light of that limited application, the FOIA does not burden substantially more speech than necessary to accomplish its purpose. The dissent would read the FOIA as applying to a private organization that receives even a negligible amount of public funding for a discrete purpose. We made clear in *Weston* that the FOIA only applies to private entities who receive government funds *en masse.* *See Weston,* 303 S.C. at 404, 401 S.E.2d at 165. The FOIA would not apply to a private entity that receives public funds for a specific purpose. For example, the FOIA would not apply to a private organization that receives public funds to operate a childcare center or healthcare clinic. However, the FOIA does apply to any private organization that is generally supported by public funds.

For the same reasons, we disagree with the dissent's characterization of the FOIA as improperly imposing conditions on the *recipient* of funds rather than on *activities.* The recipient versus activities distinction is not particularly apposite here because the FOIA does not apply to a recipient of public funds as a condition of the receipt of the funds. Rather, the general support of an entity through public funds brings it within the class of entities to which the FOIA applies.

## CONCLUSION

We hold the circuit court erred in finding the FOIA unconstitutional under the First Amendment when applied to SCA-

---

ty" subject to the statute as including "[o]rganizations or agencies supported in whole or in part by public funds, or expending public funds"); Tex. Gov't Code Ann. § 552.003 (defining a "governmental body" subject to the state's public records law as including "the part, section, or portion of an organization, corporation, commission, committee, institution, or agency that spends or that is supported in whole or in part by public funds"); Va.Code Ann. § 2.2-3701 (defining a "public body" subject to the statute as including "other organizations ... supported wholly or principally by public funds"); W. Va.Code § 29B-1-2 (defining a "public body" subject to the act as including "any other body ... which is primarily funded by the state or local authority").

SA. The FOIA is a content-neutral statute that serves important governmental interests and does not burden substantially more speech than necessary to serve those interests, and therefore, it does not violate SCASA's First Amendment speech and association rights. However, we express no opinion as to whether SCASA is a public body subject to the FOIA and leave that issue for determination on remand. For the foregoing reasons, we reverse the circuit court's dismissal of this case and remand to the circuit court for further proceedings.

TOAL, C.J., and KITTREDGE, J., concur. PLEICONES, J., concurring in part and dissenting in part in a separate opinion in which BEATTY, J., concurs.

JUSTICE PLEICONES:

I respectfully concur in part and dissent in part. I wholeheartedly agree with the majority regarding the importance of ensuring transparency and accountability in the expenditure of public funds, and in my view FOIA plays a critical part in providing that transparency. But critical governmental interests alone cannot justify undue burdens on First Amendment rights. In my view, FOIA cannot constitutionally be applied to "any organization, corporation, or agency supported ... in part by public funds or expending public funds" without regard to the potential application to organizations that may engage in both public and private functions because to do so may run afoul of First Amendment rights. I would therefore sever from the definitional section of FOIA the language that applies it in sweeping terms to any organization that receives any public funds. Whether SCASA is subject to FOIA for other reasons can be explored on remand.

South Carolina's Freedom of Information Act, S.C.Code Ann. §§ 30–4–10 et seq., defines a "public body" as "any organization, corporation, or agency supported in whole or in part by public funds or expending public funds." S.C.Code Ann. § 30–4–20(a). FOIA requires any such "public body" make its records available for public inspection and copying and announce and hold its meetings open to the public, subject to certain exemptions. §§ 30–4–30 to –90. Failure to comply with the requirements subjects both groups and individuals to civil and criminal liability. §§ 30–4–100 to –110.

SCASA moved to dismiss Appellant's suit to compel its disclosure of certain records on the basis that the FOIA requirements violate its First Amendment speech rights as a private organization engaged in issue advocacy.

"It is well established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable." *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 129, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). Thus, we must evaluate SCASA's challenge as a facial one: does FOIA impermissibly intrude on the First Amendment rights of organizations that receive some public funding but are not wholly instrumentalities of the state? As explained *infra,* in my view the sweeping applicability of FOIA disclosure and open meetings requirements impermissibly intrudes on First Amendment rights because the requirements apply to any organization that receives any public funding without any differentiation of its publicly and privately funded activities.

The First Amendment protects not only the right to speak but also the right not to speak and the right to speak in private. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 559, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Buckley v. Valeo,* 424 U.S. 1, 64–65, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In addition, it protects the right of an association or organization to deliberate internally and to formulate its message without interference. *See Herbert v. Lando,* 441 U.S. 153, 190, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) ("Through the editorial process expression is composed; to regulate the process is therefore to regulate the expression."); *Perry v. Schwarzenegger,* 591 F.3d 1126, 1142 n. 9 (9th Cir.2009). Thus, I agree with the majority that FOIA disclosure requirements implicate First Amendment concerns.

In addition, the majority correctly recognizes that the burden FOIA disclosure and open meetings requirements impose on speech and association rights is substantial, impairing an organization's ability to deliberate internally and outside the presence of its opponents or to formulate its message in private. *See AFL–CIO v. Federal Election Commission,* 333 F.3d 168, 178 (D.C.Cir.2003) ("[C]ompel[ling] public disclosure

of an association's confidential internal materials ... intrudes on the privacy of association and belief guaranteed by the First Amendment [and] seriously interferes with internal group operations and effectiveness."). These requirements also impose the substantial burden of legal uncertainty regarding an organization's obligations and vulnerability to legal attack and even individuals' liability to criminal charges. *See Citizens United v. Federal Election Commission,* 558 U.S. 310, 130 S.Ct. 876, 889, 891, 175 L.Ed.2d 753 (2010) ("Prolix laws chill speech for the same reason that vague laws chill speech: People of common intelligence must necessarily guess at the law's meaning and differ as to its application"; "First Amendment standards ... must give the benefit of any doubt to protecting rather than stifling speech." (internal quotation marks and brackets omitted)).

Nevertheless, it is axiomatic that the First Amendment protects only private speech from governmental interference.[8] Thus, if an organization is in fact a governmental entity or wholly a government instrumentality, it does not possess First Amendment rights. Similarly, a public employee speaking in the course and scope of her duties as a spokesperson for the government's message has no First Amendment right to avoid restrictions on that speech. *See Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Likewise, when the government engages a private speaker to promote its message, the resulting communication is not private speech protected by the First Amendment, and the government is free to restrict it.[9] *See Rust v. Sullivan,* 500 U.S. 173, 192–95, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991).

The requirements at issue here purport to apply only to "public" bodies as defined by § 30–4–20(a). However, the

8. *See, e.g.,* Randall Bezanson and William Buss, *The Many Faces of Government Speech,* 86 Iowa L.Rev. 1377, 1502 (2001) ("The First Amendment is explicitly drafted as a restraint on government: 'Congress shall make no law abridging the freedom of speech.' If the government can claim to act as a First Amendment right holder, the First Amendment loses coherence, for in such situations there is nothing for the First Amendment to act on or constrain. The idea of government 'speech' under the First Amendment is thus both illogical and inconsistent with the text.").

9. When the government funds a limited forum for private speech rather than funding its own message, a different standard applies. *See Legal*

statutory designation of an organization as a "public body" does not establish that an entity functions as a governmental body for purposes of a constitutional challenge. *See, e.g., Rendell–Baker v. Kohn,* 457 U.S. 830, 840–43, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (determining whether actions are fairly attributable to the state in § 1983 context).

Our previous interpretation of "public funds" in § 30–4–20(a) somewhat narrows the applicability of the FOIA disclosure requirements. We have held that the definition of "public funds" excludes "payment from public bodies in return for supplying specific goods or services on an arms[-]length basis." *Weston v. Carolina Research and Development Foundation,* 303 S.C. 398, 404, 401 S.E.2d 161, 165 (1991). Thus, many businesses and organizations engaging in transactions with government entities are not subjected to FOIA requirements. However, FOIA remains applicable to the entirety of any recipient organization if "a block of public funds is diverted en masse from a public body to a related organization, or when the related organization undertakes the management of the expenditure of public funds...." *Id.* The clear language of the statute, we said in *Weston,* mandates that an organization receiving public funds in even one transaction is a "public body" for purposes of FOIA requirements, and construing the statute to reach only governmental or quasi-governmental organizations would "obliterate both the intent and the clear meaning of the statutory definition." 303 S.C. at 403, 401 S.E.2d at 164. Thus, the statute may reach an otherwise private organization that receives even a negligible amount of public funding for a discrete purpose.[10] In effect, therefore,

*Services Corp. v. Velazquez,* 531 U.S. 533, 540–42, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001). Viewpoint-based restrictions are permissible only when the government funds dissemination of its own message. *Id.* The FOIA disclosure requirements at issue here are viewpoint neutral, applying without distinction to a broad range of speech of any organization that receives any public funding. Thus, it is unnecessary to determine whether funds to which the requirements attach are provided for the purpose of communicating the government's own message or funding a limited forum for private speech.

10. At a minimum, for purposes of a First Amendment challenge, we must assume that a lay person would read the law in this way. *See Citizens United, supra.*

FOIA disclosure requirements attach as a condition to the receipt by a private organization of any government funding that is not exchanged for a specific good or service in an arm's-length transaction. § 30–4–20(a); *Weston, supra.*

Government may not impose an unconstitutional condition on the receipt of public benefits. *See Rust v. Sullivan,* 500 U.S. at 196–98, 111 S.Ct. 1759; *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 59, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006). A condition is unconstitutional if it could not be imposed directly. *See Rumsfeld,* 547 U.S. at 59, 126 S.Ct. 1297.

Here, the conditions imposed by the receipt of *any* public funding include that most of the recipient organization's meetings be on the record and open to the public and that many of its records be disclosed to any interested party. Failing to comply with these requirements subjects organizations and individuals to civil liability and criminal penalty.

Although such requirements do not fit readily within any established line of First Amendment jurisprudence,[11] I assume for purposes of analysis that the majority is correct to evalu-

---

11. First Amendment jurisprudence contains two clear lines of disclosure analysis. One relates to mandated disclosure of membership lists, primarily implicating the associational rights of members. *See, e.g., NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). The other distinct line of cases dealing with disclosure relates to the election context, primarily implicating political association and somewhat more extensive disclosure, but much less than is required under FOIA. *See, e.g., Citizens United, supra; Buckley v. Valeo, supra; John Doe No. 1 v. Reed,* —— U.S. ——, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010). Neither is directly applicable to the required disclosure of broad swaths of an organization's internal communications, implicating the right to speak privately, deliberate internally, formulate a message without interference, and associate effectively. Even if election-related disclosure precedents were directly applicable in this case, as the majority applies them for purposes of associational rights, in my view the majority has not shown how the restrictions at issue are reasonable in relation to their purpose or are not overbroad. If, for example, an organization received government funding for a discrete, relatively minor activity in which it acted to convey the government's message, there is no reason why its membership list need be disclosed in order for the public to know the purpose and manner in which public funds were spent. *See Clingman v. Beaver,* 544 U.S. 581, 590, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005).

ate FOIA disclosure and open meetings requirements as content-neutral time, place, or manner restrictions on speech, thus subject to intermediate scrutiny. Under this standard, speech regulation must advance a significant, legitimate government interest (prong one). *See Hill v. Colorado*, 530 U.S. 703, 725–26, 120 S.Ct. 2480, 147 L.Ed.2d 597.

I agree with the majority that FOIA is designed to achieve a significant and legitimate government interest in transparency regarding the spending of public funds. However, neither the State nor the majority has explained, nor is it apparent, how extending FOIA requirements beyond the publicly subsidized activities to entire organizations receiving any public funds advances the legitimate public interest at stake. Because the requirements reach activities of an organization that are unrelated to publicly funded activities, they have not been shown to *advance* a legitimate government interest and fail prong one.

In addition, to survive intermediate scrutiny, the regulation must be narrowly tailored so that the means chosen do not "burden substantially more speech than is necessary to further the government's legitimate interests" (prong two). *Ward v. Rock Against Racism*, 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Where a statute sweeps broadly without any interest-related purpose for that sweep, it burdens substantially more speech than necessary to accomplish its purpose. *FCC v. League of Women Voters of California*, 468 U.S. 364, 400, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984) (disallowing prohibition on any editorializing as condition of receipt of any government funding). Indeed, in its unconstitutional conditions analysis, the United States Supreme Court has emphasized that imposition of a speech-related condition is suspect when it applies to a *recipient* rather than to an *activity*.[12] *See Rust v. Sullivan*, 500 U.S. at 197, 111 S.Ct. 1759 (explaining that a condition's applying to "the *recipient* of

12. The cases cited by the majority as upholding First Amendment challenges to other states' FOIA requirements are inapposite because, in those cases, the restrictions were challenged as infringements on the First Amendment rights of government officeholders acting in their official capacities. Those cases did not address the constitutionality of extending FOIA requirements to officeholders or entities engaging in protected activities unrelated to their publicly funded activities.

the subsidy rather than ... a particular program or service"
is key to determination (emphasis in original)). Here, the
condition is imposed on the recipient of the funds rather than
on the particular program or service being funded and thus
fails prong two because it lacks any tailoring. The words of
another court, though in a slightly different context,[13] are
applicable here:

> Having concluded that the [plaintiffs] have asserted sub-
> stantial First Amendment interests in [avoiding] the disclo-
> sure of their own internal materials and at least marginal
> interests in preventing the chilling of political participation
> by their members and officials, we proceed to assess the
> strength of the government's proffered interest in disclo-
> sure. The Commission offers two justifications : The regu-
> lation deters FECA violations, and it promotes the agency's
> own public accountability. Although we have no doubt that
> these interests are valid, we need not engage in a detailed
> balancing analysis, for the Commission made no attempt to
> tailor its policy to avoid unnecessarily burdening the First
> Amendment rights of the political organizations it investi-
> gates. *See, e.g.,* United *States v. Popa,* 187 F.3d 672, 676
> (D.C.Cir.1999) (declining to determine the precise level of
> scrutiny applicable to a particular statute where it was
> insufficiently tailored to meet even the least exacting stan-
> dard). Indeed, the blanket nature of the Commission's
> regulation—requiring, as it does, the release of *all* informa-
> tion not expressly exempted by FOIA—appears to result in
> the release of significant amounts of information that fur-
> thers neither goal. For example, the Commission never
> explains how releasing investigatory files will deter future
> violations in cases where, as here, the respondents have
> been cleared of wrongdoing. Nor does the Commission
> explain how a policy requiring the release of materials that
> played no meaningful role in its decisionmaking process will
> promote its own accountability. The facts of this case are
> particularly disturbing because the Commission proposes to
> release between 10,000 and 20,000 pages of documentation
> that it has never examined. The materials therefore cannot

---

**13.** *AFL–CIO* analyzed a Federal Election Commission policy of publicly
disseminating all materials obtained in its investigations of organiza-
tions accused of violating election laws.

shed light on the Commission's reasoning, and may not even relate to questionable activities. The fact that the Commission redacts information falling under one or more FOIA exemptions is no answer, since the Freedom of Information Act does little to protect the First Amendment interests at issue.

*AFL–CIO v. Federal Election Commission,* 333 F.3d 168, 178 (2003). Moreover, the potential intrusion on First Amendment rights here is even more disturbing than in *AFL–CIO:* recipient organizations are subjected not to disclosure of material related to a discrete investigation instigated by an agency with prosecutorial discretion to decline to investigate spurious accusations but to perpetual and wide-ranging disclosure requirements at the behest of *any individual or organization. See* §§ 30–4–20(b), 30–4–30(a). In addition, as was also the case in *AFL–CIO,* the FOIA exemptions do little here to protect the First Amendment interests at issue.

The burden that is imposed on unrelated exercise of a speaker's First Amendment rights by the definition of "public body" in § 30–4–20(a) has no substantial relation to the governmental interest at stake. It applies solely by virtue of the fact that the organization has received public funds, regardless of any relationship between the organization's publicly and privately funded activities. Thus, the FOIA disclosure requirements at issue impose an unconstitutional condition on the exercise of First Amendment rights.

In my view, we must strike as unconstitutional the language "or in part" and "or expending public funds" from § 30–4–20(a). Likewise, I would hold that the interpretation of "quasi-governmental body of the State" cannot extend to organizations that engage in activities not fairly attributable to the government itself. I have no trouble also concluding that such action would not destroy the legislative intent of the General Assembly in enacting FOIA, since FOIA would still apply to governmental bodies. *Stone v. Traynham,* 278 S.C. 407, 409–10, 297 S.E.2d 420, 422 (1982) (striking an exemption from a statute only "as it applies to *appointed* bodies" upon a determination that the action would not destroy legislative intent (emphasis in original)). It would be inconceivable the General Assembly would not provide for transparency of governance by public agencies and other governmental bodies

on the basis it could not also apply the same disclosure requirements on private organizations in their entirety when they receive any amount of public funding. *Id.* This is not to say that organizations private only in form would be exempt from FOIA or that appropriately tailored requirements could not be upheld.

Thus, I would affirm as modified, holding that the portions of FOIA extending it to organizations in their entirety upon the receipt of any public funds are facially unconstitutional and are severed from the statute. I would remand to the trial court for further proceedings consistent with this view.

BEATTY, J., concurs.